PEOPLE ex rel. REPUBLICAN & JOURNAL CO. v. McCARTHY et al.

(Supreme Court, Appellate Division, Third Department. November 10, 1909.)

NEWSPAPERS (§ 1*)—PUBLICATION OF SESSION LAWS—VALIDITY OF DESIGNATION.

> County Law (Laws 1892, p. 1749, c. 686) § 19, as amended by Laws 1898, p. 1014, c. 349, Laws 1900, p. 933, c. 400, and Laws 1905, p. 1156, c. 496, provides that the members of the board of supervisors shall designate a paper fairly representing the political party to which they respectively belong, "regard being had to the advocacy by such paper of the principles of its party" and its "regular and general circulation in the towns of the county," to publish the Session Laws and Concurrent Resolutions. The board designated a paper having the largest circulation, on its representation that it would publish the laws in three other county papers in addition, in accordance with an agreement had with such other papers as to a division of compensation, and the board accepted a bond from the designated paper and the others to save them harmless from litigation arising from the designation. *Held* that, since the board was not required to designate the paper of largest circulation, and since the facts showed that the board did not regard the "regular and general circulation of the paper designated," but considered the four papers together, the designation was illegal.
>
> [Ed. Note.—For other cases, see Newspapers, Cent. Dig. §§ 1–13; Dec. Dig. § 1.*]
>
> Smith, P. J., dissenting.

Certiorari by the People, on the relation of the Republican & Journal Company, against John H. McCarthy and others, to review an order designating a newspaper. Designation annulled.

Argued before SMITH, P. J., and CHESTER, KELLOGG, SEWELL, and COCHRANE, JJ.

George E. Van Kennen, for appellant.

C. S. Ferris, for respondent.

CHESTER, J. The Republican members of the board of supervisors of St. Lawrence county, on November 24, 1908, designated the Courier and Freeman, a Republican newspaper published at Potsdam, in said county, to publish the Session Laws and Concurrent Resolutions for the year 1909. The Republican and Journal Company, which publishes the St. Lawrence Republican, a Republican newspaper published at Ogdensburg, has sued out this writ to determine the legality of such designation.

The designation was made under section 19 of the County Law (Laws 1892, p. 1749, c. 686), as amended by Laws 1898, p. 1014, c. 349, Laws 1900, p. 933, c. 400, and Laws 1905, p. 1156, c. 496. That section provides that the members of the board of supervisors representing respectively each of the two principal political parties shall designate in writing—

"a paper fairly representing the political party to which they respectively belong, regard being had to the advocacy by such paper of the principles of its party and its support of the state and national nominees thereof, and to its regular and general circulation in the towns of the county, to publish the Session Laws and Concurrent Resolutions of the Legislature required by law to be published."

No question is made that the paper designated was not one fairly representing the political party to which the supervisors designating it belonged; but it is claimed that the designation made was illegal for other reasons. Prior to making such designation, the relator showed by affidavit to the members making the same that the paper published by it circulated in every town in the county, and stated the number of its circulation in each of such towns, and that its aggregate weekly circulation in such towns was 5,854 copies. It also appeared that it had by far the largest circulation of any paper in the county. The statute, however, does not make it incumbent upon the members of the board to select the paper having the largest circulation; but in making the designation of a paper the statute requires that they must have regard to its regular and general circulation in the towns of the county. In the return to the writ it is shown that the publishers of the Courier and Freeman orally stated to the Republican members of the board, prior to the designation of that paper, that the average weekly bona fide circulation thereof in the county of St. Lawrence was 3,200, and it is admitted in the return that no statement of the circulation of that paper in each of the various towns of the county was made. That being so, the supervisors making the designation could not have had regard to its regular and general circulation in the towns of the county, as is required by the statute.

The return shows further that prior to the designation the publishers of the Courier and Freeman stated that, in the event that it was designated, they would cause the Session Laws to be circulated with the Massena Observer, published at Massena, the St. Lawrence Plain Dealer, published at Canton, and the Gouverneur Free Press, published at Gouverneur, pursuant to an agreement which the publishers of the Courier and Freeman had made with the publishers of such other newspapers, and that each of such other newspapers had a circulation in the county of upwards of 2,000. It was also stated that, if the Courier and Freeman was designated, they would cause the Session Laws to be circulated with the other three papers named, and, after deducting from the compensation to be received therefor, the expense of printing the supplement containing the Session Laws, they would divide the net compensation equally among themselves and the owners of such three papers. It further appears that the representatives of all four papers joined in a bond to indemnify the defendants for all expenses which might attend any litigation arising out of the designation of the

Courier and Freeman.  Respondents also state in their return that, in designating the Courier and Freeman, they took into consideration, not only its circulation, but the circulation of the other three papers named. It is also evident that they were influenced in the designation by the other facts stated.

Nothing can be found in the statute that would sanction such an agreement or understanding as existed between the proprietors of these papers, and which was undoubtedly the prime inducement for designating the paper in question.  It is true but one paper was in form designated.  But can it be said that its designation was made, having regard to "its" regular and general circulation in the towns of the county, when the supervisors did not have before them any information or knowledge as to such circulation, except the statement of its aggregate circulation, and when they state that they also had regard to the circulation of the three other papers?  It is probable that the members deemed that the course pursued in making this designation would give as wide and general publicity of the Session Laws as could have been had if the Republican paper in the county having the largest circulation had been designated; but equal or greater publicity could have been had by designating a paper with substantially no circulation outside of a single town, with an agreement by the proprietor of such paper that in the issue or issues containing the Session Laws a copy should be sent to every voter in the county.  But that is not what the statute requires.  That course would subvert the scheme of the statute, and would result in the designation of a paper without regard to its regular and general circulation in the towns of the county.

It is evident, too, that the members had some doubt of the legality of their action in making the designation they did, when, before making it, they required the parties interested to give a bond to protect them against a threatened litigation which might follow their act in making the proposed designation.  We held in People ex rel. Hall v. Ford, 127 App. Div. 444, 112 N. Y. Supp. 130, that the supervisors could not designate one paper to publish the Session Laws and another to publish the Concurrent Resolutions.  Neither do we think they can lawfully designate one paper based upon the circulation of four, upon the understanding that all are to publish, and that the compensation for the publication is to be equally divided among the four.  In the one case, the statute would be violated, and in the other circumvented.  If the statute in its present form does not permit a proper distribution of the patronage involved in these publications, the correction must rest with the Legislature, rather than with the courts.  In this case it is apparent that the defendants had regard to other matters than the regular and general circulation of the paper designated in the towns of the county, and, therefore, that it cannot stand.

The designation is therefore annulled, with $50 costs and disbursements to the relator.  All concur, except SMITH, P. J., who dissents.